NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
:
Dr. Christine LENTZ and :
Lynn PETROZZA, :
:          Civil No. 17-4515 (RBK/JS)
          Plaintiffs, :
: **OPINION**
          v. :
:
Dr. Kathleen TAYLOR, *et al.*, :
:
          Defendants. :
:
_____ :

**KUGLER**, United States District Judge:

     **THIS MATTER** comes before the Court on Defendants Kathleen Taylor and Ocean City

Board of Education's Motion to Dismiss Plaintiffs' Amended Complaint [Doc. No. 46],

Defendants DFDR Consulting, LLC's Motion to Dismiss Plaintiffs' Amended Complaint [Doc.

No. 49], and Defendants Comegno Law Group, P.C., Jeffrey R. Caccese, Esq., and Mark G.

Toscano, Esq.'s Motion to Dismiss Plaintiffs' Amended Complaint [Doc. No. 50].  The Court

henceforth refers to Dr. Christine Lentz as "Plaintiff" and refers to Dr. Christine Lentz and Lynn

Petrozza collectively as "Plaintiffs."[1]  For the reasons set forth in the following Opinion, the

motions to dismiss are **GRANTED** and Plaintiffs' Amended Complaint is **DISMISSED**.

---

[1] The allegations in this matter almost exclusively involve Dr. Christine Lentz.  As detailed in the
Opinion below, Lynn Petrozza is only a relevant party to this lawsuit to the extent that she brings
a claim for loss of consortium as Lentz's partner.

# I.     BACKGROUND[2]

This case involves an alleged conspiracy to remove and criminally charge a public-school teacher.  Plaintiff claims that her role as a salary negotiator with the school board placed her in the cross-hairs of a vast conspiracy.  A group of lawyers, consultants, and school officials – all acting in cahoots – falsely claimed that Plaintiff had illegally accessed the school superintendent's email.  Then, through a fraudulent investigation, these Defendants fabricated and withheld evidence for the sole purpose of removing Plaintiff from her position at the school. Plaintiff not only resigned her position, but subsequently faced criminal charges for theft.  After a jury acquitted her in the criminal action, Plaintiff filed the instant lawsuit against the superintendent, the school board, and others, alleging various constitutional and state law violations.

❖

Plaintiff worked as a teacher in the Ocean City School District for more than twenty years.  Am. Compl. ¶ 24.  During that time, she served various teaching and administrative roles. *Id.*  Her employment included a Collective Bargaining Agreement ("CBA") with the Ocean City Administrators' Association ("OCAA").  *Id.* ¶ 25.  Such agreement included, among other things, a grievance process.  *Id.*

For more than ten years, Defendant Superintendent Kathleen Taylor ("Superintendent Taylor" or "Taylor") displayed an animus and hostility toward Plaintiff.  *Id.* ¶¶ 26–35.  In one instance, Plaintiff had assisted a fellow member of the school in filing a grievance letter.  *Id.* ¶ 29.  Superintendent Taylor then required her to attend a meeting and warned her to stop

---

[2] On this motion to dismiss, the Court accepts as true the facts pled in the Complaint and construes them in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

"working against the District." *Id.* In another instance, Taylor attempted to interfere with Plaintiff's appointment to the Ocean City Board of Education ("School Board" or "Board") by "requesting an unnecessary" vetting procedure. *Id.* ¶ 33. In a third instance, Plaintiff alleged that Taylor falsely accused her of running a for-profit business on school grounds and then wrote a disciplinary letter against her. *Id.* ¶ 34. In a fourth example, Taylor accused Plaintiff of leaking confidential information from the School Board. *Id.* ¶ 35.

Taylor's animus escalated following Plaintiff's civil union with Lynn Petrozza in August 2013. *Id.* ¶ 36. For example, Taylor initially denied their application of health benefits without providing a reason for such denial. *Id.* ¶ 40. In addition, Plaintiff claims that Taylor scrutinized her administrative decisions, pressured her to resign her position as an Athletic Director, avoided direct communication with her, and even moved Plaintiff's office to the other side of the school. *Id.* ¶¶ 43–46, 97. Plaintiff also alleges that Taylor "responded inappropriately" to an incident involving Petrozza's son. *Id.* ¶ 49. Taylor allegedly failed to enforce district policy when a support staff member exhibited predatory behavior toward Petrozza's son. *Id.*

Taylor's supposed animus toward Plaintiff heightened again in 2014. In the fall, Plaintiff became the Chair of the OCAA's negotiation committee. *Id.* ¶ 51. In this role, Plaintiff negotiated with the School Board over the collective bargaining contracts. *Id.* ¶ 53. Plaintiff interacted with Taylor and the School Board's counsel. *Id.* ¶ 56. The School Board counsel included Mark Toscano, Esq. and Jeffrey Caccase, Esq. of the Comegno Law Firm (collectively, "Comegno Defendants"). *Id.*

In 2015, as Chair of the OCAA negotiation committee, Plaintiff experienced another series of difficulties. These difficulties formed the basis of the instant lawsuit. First, she states that Superintendent Taylor and Comegno Defendants "did not want her involved in the

negotiations process." *Id.* ¶ 64. Next, she claims that Comegno Defendants leaked confidential information and used such information to initiate a false investigation against her. *Id.* ¶ 72. Specifically, Mark Toscano informed Superintendent Taylor that he believed someone had accessed Taylor's e-mail in order to leak confidential information. *Id.* ¶ 79. Comegno Law Group then launched an investigation into Taylor's school email account. *Id.* ¶ 110.

According to Plaintiff, the internal investigation was little more than a "bogus inquiry into alleged misconduct." *Id.* ¶ 135. For example, Plaintiff claims Comegno Defendants knew they had leaked the confidential information and hired Defendant DFDR Consulting ("DFDR Consulting" or "DFDR") to conduct an incomplete and faulty investigation. *Id.* ¶ 156. The investigation also omitted exculpatory evidence. *Id.* ¶ 161. It lacked information about other employees who were known to have unlawfully accessed Taylor's computer. *Id.* ¶ 155. It also ignored information that showed the iPad used to hack Taylor's emails had been missing since October 2014. *Id.* ¶ 162. Comegno Defendants then submitted these incomplete findings to the Cape May County Prosecutor. *Id.* ¶ 109. Plaintiff claims that Comegno Defendants hoped the investigation would harm her. *Id.* ¶ 109.

On June 23, 2015, Plaintiff learned first-hand of the investigation when Taylor informed her by telephone. *Id.* ¶ 112. Then, on June 24, 2015, Plaintiff received a formal letter notifying her that she was charged with unauthorized access of Taylor's email and was therefore suspended. *Id.* ¶ 113. The letter also indicated that a hearing would take place regarding her suspension on June 26, 2015.

Plaintiff claims the June 26, 2015 meeting was prejudicial and coercive. First, Plaintiff claims that her lawyer, Wayne Oppito, a representative selected by Defendants, did not represent her interests. *Id.* ¶ 116. In addition, because Oppito served as a representative of New Jersey

Principals and Supervisors Association ("NJPSA"), Plaintiff claims his role in the meeting violated her CBA, which afforded her the right to select her own counsel for a meeting. *Id.* P 121. Plaintiff also suggests Oppito was not prepared and made no effort to speak with her prior to the meeting. *Id.* P 121. Finally, Oppito allegedly interrupted Plaintiff several times as she answered Board questions. *Id.* P 129.

Plaintiff describes other instances of prejudice from the June 26, 2015 meeting. For example, Comegno Defendants threatened her pension. *Id.* P 132. To save her pension, Plaintiff agreed to resign. *Id.* P 133. The final signed agreement stated that she would resign on August 1, 2015. *Id.* P 165. Several days after resigning, Plaintiff submitted a request to rescind this prior agreement, but no one responded. *Id.* P 167.

On August 4, 2015, the Cape May County Prosecutor formally charged Plaintiff for the unauthorized access of Taylor's email. *Id.* P 170. The criminal charges included second degree official misconduct, third degree theft, and third degree computer-related theft. *Id.* Plaintiff appeared in Court and was released on her own recognizance. *Id.* P 185. She then proceeded to trial on September 26, 2017. *Id.* P 188. At trial, Plaintiff claimed Defendants "acted inappropriately" and "attempt[ed] to influence testimony or statements." *Id.* P 190. On November 3, 2017, a jury acquitted Plaintiff of any criminal wrongdoing. *Id.* P 189.

On June 20, 2017, Plaintiff filed suit against Superintendent Taylor, School Board, Comegno Law Group, Mark Toscano, Esq., Jeffrey Caccese, Esq., and DFDR Consulting, LLC. The Amended Complaint brings twelve causes of action. Counts I through VI claim violations of 42 U.S.C. § 1983. Specifically, Counts I and II allege violations of Plaintiff's substantive due process rights under the Fourteenth Amendment. Counts III and IV similarly claim violations of Plaintiff's procedural due process rights. Counts V and VI claim violations of Plaintiff's Fourth

Amendment rights, alleging malicious prosecution and conspiracy. Counts VII through XII are New Jersey state causes of action. Count VII alleges violations pursuant to New Jersey Law Against Discrimination ("NJLAD"), focusing on adverse treatment based upon Plaintiff's sexual orientation. Count VIII asserts a breach of contract claim against the Ocean City Board of Education for violations of Plaintiff's CBA. Count IX then alleges tortious interference against Superintendent Taylor and Comegno Defendants. Count X claims intentional infliction of emotional distress against all Defendants. Finally, Count XII claims loss of consortium on behalf of Lynn Petrozza, Plaintiff's partner.

Defendants now move to dismiss the Amended Complaint. Specifically, Comegno Defendants and DFDR Consulting argue that they are not state actors under Section 1983. As such, they argue that the Court should dismiss all federal claims and decline to exercise supplemental jurisdiction over the remaining state law claims. Relatedly, Defendant Taylor and the Board (collectively, "City Defendants") argue that Plaintiff has not suffered any constitutional violations. City Defendants argue that Plaintiff's substantive and procedural due process claims fail as a matter of law. Specifically, Plaintiff has no substantive right to her continued tenured employment. In addition, Plaintiff's procedural rights were upheld during both her suspension hearing and criminal trial. Finally, City Defendants argue that Plaintiff's Fourth Amendment claims must fail because attending a criminal trial is not a constitutional seizure.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts

accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether the non-moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). While "detailed factual allegations" are not necessary, a "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

In making this determination, the court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 678). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Iqbal*, 556 U.S. at 679.  A complaint cannot survive a motion to dismiss where a court can only infer that a claim is merely possible rather than plausible.  *Id.*

## III.    DISCUSSION

Plaintiff makes several claims alleging violations of 42 U.S.C. § 1983.  Plaintiff brings these claims against three groups of Defendants: Superintendent Taylor and the School Board ("City Defendants"); lawyers Toscano, Caccase, and the Comegno Law firm ("Comegno Defendants"); and DFDR Consulting, the company hired to investigate the improper access of Superintendent's email.  The Court first considers the Section 1983 claims (Counts I–VI) against DFDR Consulting and Comegno Defendants.

### A.  Plaintiff's Federal Claims Against DFDR Consulting

Plaintiff claims that DFDR violated 42 U.S.C. § 1983.  This law "subjects to liability those who deprive persons of federal constitutional or statutory rights 'under color of any statute, ordinance, regulation, custom, or usage' of a state."  *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (quoting 42 U.S.C. § 1983).  "[A] plaintiff seeking to hold an individual liable under § 1983 must establish that she was deprived of a federal constitutional or statutory right by a state actor."  *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009).  The issue before this Court is whether DFDR is a state actor under Section 1983.

#### 1.  Whether DFDR Consulting engaged in state action

To establish one as being a state actor, "[t]he principal question at stake is whether there is such a close nexus between the state and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."  *Leshko*, 423 F.3d at 339 (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)) (internal quotations

omitted).  The Third Circuit has provided three broad tests to determine whether state action exists:

> (1) [W]hether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.

*Kach*, 589 F.3d at 646 (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d. Cir. 1995)) (alterations and internal quotation marks omitted).

Here, Plaintiff claims that DFDR gave knowingly false and incomplete information to the Cape May County Prosecutor's Office, and subsequently conspired to have Plaintiff arrested and charged with crimes related to email access and theft.  Plaintiff offers two arguments to allege that DFDR is a state actor.  First, Plaintiff argues that DFDR occupied a role traditionally reserved by the state.  Second, Plaintiff states that DFDR participated in the conspiracy and is therefore a state actor under a joint participant theory.  The Court carefully considers these arguments and finds that both fail.

First, DFDR is not a state actor simply because it engaged in information gathering and dissemination with a state actor.  Courts have consistently held that merely giving information to state actors is insufficient to convert a private party into a state actor.  *See Braxton v. Lenhardt*, No. 12-5155, 2013 WL 3336685, at *7 (D.N.J. July 2, 2013) (finding no state action where a private party "merely responded to what appeared to be a legitimate police request for information regarding criminal activity"); *see also Moldowan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009) ("Providing information to the police, responding to questions about a crime, and offering witness testimony at a criminal trial does not expose a private individual to liability for actions take 'under color of law.'").

Next, Plaintiff charges that DFDR must be a state actor because the investigation yielded incomplete or false results. Contrary to Plaintiff's assertion, the distribution of false statements does not itself convert a private party to a state actor. *See, e.g.*, *Collins v. Christie*, No. 06-4702, 2007 WL 2407105, at *4 & n.9 (E.D. Pa. 2007) (finding no state action on the basis of giving statements to the police, even if knowingly false); *Gilbert v. Feld*, 788 F. Supp. 854, 860 (E.D. Pa. 1992) (finding no state action where the complaint alleged that the private party provided the District Attorney with "false and misleading information in order to instigate criminal charges against plaintiff"). DFDR's investigation and providing of information, even if assumed to be false information, does not in and of itself make DFDR a state actor. Thus, Plaintiff's first argument asserting that DFDR is a state actor is unpersuasive.

## 2. Whether DFDR engaged in a state conspiracy

Plaintiff next claims that DFDR engaged in a broader conspiracy to violate her constitutional rights and is thus a state actor under a joint participant theory. *See Kach*, 589 F.3d at 646. Again, Plaintiff alleges that DFDR failed to conduct a complete investigation, leaked false information for the purpose of harming her, and provided false and incomplete information to the Cape May County Prosecutor. In Plaintiff's view, DFDR colluded with the other Defendants under color of state law and thus "act[ed] in concert and conspiracy." Am. Compl. ¶¶ 222–23. The Court carefully considers this argument and finds it unconvincing.

The law is well-settled that private actors may become state actors under a conspiracy-based theory. As the Third Circuit explained, providing false information to a state actor, coupled with a conspiracy to violate constitutional rights, can transform a private actor into a state actor. *See Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir. 2010). Thus, in order to sustain a claim that DFDR acted in concert with the prosecutor, a

plaintiff "must assert facts from which a conspiratorial agreement can be inferred." *Id.* at 178. A satisfactory pleading will therefore provide "enough factual matter (taken as true) to suggest that an agreement was made." *Id.* (quoting *Twombly*, 550 U.S. at 556) (internal quotations omitted).

Here, Plaintiff fails to plausibly allege that DFDR engaged in a conspiracy. Most obviously, the Amended Complaint offers but a series of vague conclusions. For example, in her claim of a conspiracy between DFDR and the Cape May County Prosecutor, Plaintiff provides no specific factual allegations against DFDR. Instead, DFDR is lumped under the amorphous umbrella of "Defendants," who "act[ed] in concert and conspiracy, committed overt acts . . . including deliberately fabricated evidence, suppressed and/or destroyed exculpatory evidence . . . ." Am. Compl. ¶¶ 222–23. Not only do these allegations impermissibly group individual parties vaguely as "Defendants," *see Vaughn v. Geo Grp.*, No. 18-10148, 2018 WL 3056066, at *3 (D.N.J. June 20, 2018), but the Amended Complaint does not plausibly allege the elements of a conspiracy. *See Great W. Mining*, 615 F.3d at 178 ("[W]e do not consider any conclusory allegations that there was 'a corrupt conspiracy,' 'an agreement,' or 'an understanding in place between the Defendants and the [government entity].'"). As such, the Amended Complaint, much like the complaint in *Great Western Mining*, "sets forth merely a conclusory allegation of agreement at some unspecified point, which does not supply adequate facts to show illegality." 615 F.3d at 179 (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted). Thus, Plaintiff's second argument asserting that DFDR is a state actor fails.

Because Plaintiff has not plausibly alleged that DFDR was a state actor under either theory, DFDR cannot be liable under a Section 1983 claim. The Court therefore **DISMISSES** Counts I through VI against DFDR.

**B.  Plaintiff's Federal Claims Against Comegno Defendants**

Plaintiff next argues that Comegno Defendants violated Section 1983 (Counts I–VI). Much like the argument against DFDR, Plaintiff offers two theories to suggest that Comegno Defendants are state actors under Section 1983.  First, Plaintiff suggests that Comegno Defendants engaged in state action by serving as counsel for the School Board.  Second, Plaintiff states that Comegno Defendants participated in the conspiracy and are therefore state actors under a joint participant theory.  Again, the Court considers whether Plaintiff plausibly alleges that the Defendants at issue are state actors under Section 1983.

**1.  Whether Comegno Defendants engaged in state action**

The Supreme Court has held that lawyers are not state actor "under color of state law" within the meaning of Section 1983 simply because they are "officers of the Court."  *Polk Cty. v. Dodson*, 454 U.S. 312, 318–19 (1981).  Further, the Third Circuit explained,

> [a]lthough states license lawyers to practice, and although lawyers are deemed "officers of the court," this is an insufficient basis for concluding that lawyers act under color of state law for the purposes of 42 U.S.C. § 1983.  Liability under 42 U.S.C. § 1983 cannot be predicated solely on the state's licensing of attorneys. Participation in a highly regulated profession does not convert a lawyer's every action into an act of the State or an act under color of state law.

*Henderson v. Fisher*, 631 F.2d 1115, 1119 (3d Cir. 1980) (per curiam) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 355 (1974); *see also Steward v. Meeker*, 459 F.2d 669, 669–70 (3d Cir. 1972) (private attorney was not a state actor under Section 1983).

Contrary to Plaintiff's assertion, Comegno Defendants are not state actors simply by acting as counsel for the Board.  Simply serving as an "officer of the Court" for a state actor does not transform a private attorney into a state actor.  *Polk Cty.*, 454 U.S. at 318.  Thus, Plaintiff's first argument asserting that Comegno Defendants are state actors is unsupported and thus, fails.

**2.  Whether Comegno Defendants engaged in conspiracy**

Plaintiff next charges that Comegno Defendants engaged in a state-sponsored conspiracy. Specifically, she claims that Comegno Defendants deliberately fabricated evidence and suppressed and/or destroyed evidence. Am. Compl. ¶¶ 222–23. Plaintiff also states that Comegno Defendants initiated an investigation with the Cape May County Prosecutor "with the intent to harm Lentz . . . ." *Id.* ¶¶ 109, 159–60. The Court carefully considers Plaintiff's state-actor argument and finds it unconvincing.

An attorney "may be held liable under section 1983 only if they have engaged in 'joint activity' with" those Defendants who in fact *are* state actors. *Hoai v. Vo*, 935 F.2d 308, 313 n.5 (D.C. Cir. 1991). "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). A conspiracy is not parallel conduct by different parties; it must embody, at its heart, "an agreement between the defendants and state officials—a 'meeting of the minds'—to violate the plaintiff's rights." *Chambers v. Phila. Media Network*, No. 11–6589, 2013 WL 4857995, at *3 (E.D. Pa. Sept. 12, 2013) (internal citations omitted). And the law is clear that the plaintiff must plead more than legal conclusions of a conspiracy or agreement. Rather, for his complaint to survive a motion to dismiss, he must plead "'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.'" *Great W. Mining*, 615 F.3d at 178 (quoting *Twombly*, 550 U.S. at 556).

Similar to the claims made against DFDR, the claims against Comegno Defendants are conclusory. Comegno Defendants are impermissibly lumped together, and the Amended Complaint fails to provide facts alleging a conspiracy. Most obviously, Plaintiff alleges no facts to support any meeting of the minds. *See Great W. Mining*, 615 F.3d at 178–79 ("Great Western

has failed to allege except in general terms the approximate time when the agreement was made, the specific parties to the agreement (*i.e.*, which judges), the period of the conspiracy, or the object of the conspiracy."); *see also, e.g.*, *Shearin v. E.F. Hutton Grp., Inc.*, 885 F.2d 1162, 1166 (3d Cir. 1989) ("To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose."), *abrogated on other grounds by Beck v. Prupis*, 529 U.S. 494 (2000).  Thus, Plaintiff's second argument asserting that Comegno Defendants are state actors is unsupported and fails.

Because Plaintiff has not plausibly alleged that Comegno Defendants are state actors under either theory, Comegno Defendants cannot be liable under any Section 1983 claims.  The Court therefore **DISMISSES** Counts I through VI against Comegno Defendants.

### C.  Plaintiff's Federal Claims Against City Defendants

Plaintiff next claims that Superintendent Taylor and the Board (collectively "City Defendants") violated Section 1983.  Specifically, Plaintiff alleges substantive and procedural due process violations under the Fourteenth Amendment.  She also claims that City Defendants violated her Fourth Amendment rights by maliciously prosecuting and conspiring against her. Because City Defendants are state actors under Section 1983, the Court first considers the issue of qualified immunity.

#### 1.  Qualified immunity

City Defendants seek shelter from Plaintiff's Section 1983 claims under the doctrine of qualified immunity.

Qualified immunity shields officials "from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This analysis is two-fold, which the Court may address in any order. First, the court is to assess whether the facts as adduced by the plaintiff amount to a constitutional violation. If this test is met, the court then determines whether the right is "clearly established." *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001); *Kopec v. Tate*, 361 F.3d 772, 775–76 (3d Cir. 2004). In other words, before engaging in a determination of whether a right is clearly established, the court may determine whether a constitutional violation has occurred, because "[i]f the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the [official] is entitled to immunity." *Id.* at 776 (quoting *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2002)). As to the second prong of the qualified immunity analysis, the Supreme Court has determined that such a finding hinges on "whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

## 2. Plaintiff's Fourth Amendment claims against City Defendants

Plaintiff claims City Defendants violated her Fourth Amendment protections by maliciously prosecution and conspiracy. City Defendants, however, argue that Plaintiff's arrest and subsequent trial did not violate her Fourth Amendment rights. This Court carefully considers the argument and finds that Plaintiff failed to plausible allege any Fourth Amendment violation.

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and

particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  A "seizure" is defined generally to occur "only when there is a governmental termination of freedom of movement through means intentionally applied." *Brower v. Cty. of Inyo*, 489 U.S. 593, 596–97 (1989).

The Third Circuit has carefully considered whether restrictions surrounding a plaintiff's arrest rise to the level of a Fourth Amendment seizure.  The Circuit adopts a seemingly bifurcated approach.  On one hand, the court has found a seizure when a plaintiff is arrested and "subjected to significant pretrial restrictions." *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005) (citing *Gallo v. City of Phila.*, 161 F.3d 217, 218 (1998)).  In *Gallo v. City of Philadelphia*, the court found a seizure existed and noted the additional restrictions that accompanied plaintiff's arrest.  161 F.3d at 222–25.  These included a $10,000 bond, a two-state travel restriction, weekly pre-trial services meetings, and mandatory attendance at all court hearings including the trial and arraignment.  *Id.*  In a lengthy opinion, the court explained that "[a]lthough it [wa]s a close question . . . these restrictions amounted to a seizure." *Id.* at 222.  On the other hand, the court has found there to be no seizure when a plaintiff did not have to post bail, had no travel restrictions, and did not have to engage in pre-trial services.  *See DiBella*, 407 F.3d at 603; *see also Holmes v. McGuigan*, 184 F. App'x 149, 151–52 (3d Cir. 2006) (finding no seizure where "the only deprivation of liberty that resulted from [plaintiff's] traffic citation was the requirement that she appear in court . . . . [H]aving to defend oneself against a speeding ticket is not a seizure."); *Mantz v. Chain*, 239 F. Supp. 2d 486, 503 (D.N.J. 2002).  The Court must therefore consider how the alleged restrictions in this case line up on the *Gallo-DiBella* spectrum.

Here, Plaintiff clearly falls within the latter category of cases and therefore fails to plausibly allege a Fourth Amendment seizure. For example, Plaintiff does not appear to suffer any serious restrictions. The Amended Complaint makes no mention of any formal arrest, bail, travel restrictions, or pre-trial services. Relatedly, her claims are drastically different from those restrictions in *Gallo*—and even there, the court noted that it was a "close question" in finding a Fourth Amendment seizure. 161 F.3d at 222; *see also Colbert v. Angstadt*, 169 F. Supp. 2d 352, 356 (E.D. Pa. 2001) (finding no seizure where "no [pre-trial]" restrictions were imposed on [plaintiff's] liberty "other than the legal obligation to appear in court at a future date"); *Bristow v. Clevenger*, 80 F. Supp. 2d 421, 430 (M.D. Pa. 2000) (concluding that the obligation to attend court hearings did not effect a "seizure" where plaintiff was not required to post bail and did not have his "freedom of movement . . . confined to any geographic area"). Plaintiff at most merely had to attend her criminal trial.

Because Plaintiff has failed to plausibly allege a Fourth Amendment seizure within her Section 1983 malicious prosecution claim, the Court **DISMISSES** Counts V and VI against City Defendants.

### 3. Plaintiff's due process claims against City Defendants

Plaintiff next alleges that City Defendants violated her substantive and procedural due process rights under the Fourteenth Amendment. Specifically, Plaintiff charges that her suspension violated her property interest in continued tenured employment. Am. Compl. ¶ 201. Plaintiff also claims that City Defendants failed to provide her notice and an opportunity to be heard. Like the malicious prosecution claims above, Plaintiff fails to allege a substantive or procedural due process violation.

### a. Plaintiff's substantive due process claims

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. While on its face this constitutional provision speaks to the adequacy of state procedures, the Supreme Court has held that the clause also has a substantive component. *See, e.g.*, *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 846–47 (1992) ("[I]t is settled that the due process clause of the Fourteenth Amendment applies to matters of substantive law as well as to matters of procedure." (quoting *Whitney v. California*, 274 U.S. 357, 373 (1927) (Brandeis, J., concurring))).

Here, even treating all of Plaintiff's allegations as true, and liberally construing the Amended Complaint in her favor, her substantive due process claim fails as a matter of law. The case law clearly shows that Plaintiff has no property interest in her employment with the Board. For example, in *Bishop v. Wood*, the Supreme Court explained,

> [t]he federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error . . . . The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

426 U.S. 341, 359–60 (1976). In interpreting this language, the Third Circuit held that tenured public employment is *not* a protected interest entitled to substantive due process protection. *See Nicholas v. Pa. State Univ.*, 227 F.3d 133, 142 (3d Cir. 2000). The Third Circuit explained, "tenured public employment is a wholly state-created contract right; it bears little resemblance to other rights and property interests that have been deemed fundamental under the Constitution."

*Id.* at 143. Not only have other circuit courts upheld this position,[3] but this Court has similarly held that substantive due process does *not* protect continued tenured employment. *See Goode v. Camden City Sch. Dist.*, No. 16-3936, 2017 WL 65146, at *4 (D.N.J. May 24, 2017) ("Plaintiffs' claim that substantive due process protects their continued tenured employment . . . is not well taken.").

Because continued tenured employment is *not* a property interest protected by the Fourteenth Amendment, Lentz substantive due process claim is futile. The Court therefore **DISMISSES WITH PREJUDICE** counts I and II against **<u>all defendants</u>**.

### b. Plaintiff's procedural due process claims against the City Defendants

Plaintiff next claims that City Defendants violated her procedural due process rights. Plaintiff focuses on two encounters. First, she argues that her suspension hearing lacked both notice and an opportunity to be heard. Second, she argues that City Defendants fabricated and withheld evidence to undermine her criminal trial. The issue is therefore whether Plaintiff plausibly alleges a Fourteenth Amendment violation in either instance.

---

[3] *See Singleton v. Cecil*, 176 F.3d 419, 425–26 (8th Cir. 1999) (en banc) ("[A] public employee's interest in continued employment with a governmental employer is not so 'fundamental' as to be protected by substantive due process."); *McKinney v. Pate*, 20 F.3d 1550, 1560 (11th Cir. 1994) (en banc) ("[E]mployment rights . . . are not 'fundamental' rights created by the Constitution . . . ."); *Local 342, Long Island Pub. Serv. Emps. v. Town Bd. of Huntington*, 31 F.3d 1191, 1196 (2d Cir. 1994) ("We do not think, however, that simple, state-law contractual rights, without more, are worthy of substantive due process protection."); *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1350 (6th Cir. 1992) ("[P]laintiffs' state-created right to tenured employment lacks substantive due process protection."); *Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1142 n.10 (4th Cir. 1990) (stating that a professor's entitlement to position in university department "is essentially a state law contract right, not a fundamental interest embodied in the Constitution"); *see also Lum v. Jensen*, 876 F.2d 1385, 1389 (9th Cir. 1989) (finding "no clearly established constitutional right to substantive due process protection of continued public employment"); *Kauth v. Hartford Ins. Co. of Illinois*, 852 F.2d 951, 958 (7th Cir. 1988) ("[I]n cases where the plaintiff complains that he has been unreasonably deprived of a state-created property interest . . . the plaintiff has not stated a substantive due process claim.").

The Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. A procedural due process analysis involves a two-step inquiry: (1) whether the complaining party has been deprived of a protected liberty or property interest, and (2) if so, whether the state's procedures comport with due process. *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006). An essential principle of due process is that a deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950). The Supreme Court described "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971) (emphasis in original); *see Bell v. Burson*, 402 U.S. 535, 542 (1971).

### i. Plaintiff's suspension

Plaintiff claims the events surrounding her suspension violated her due process rights. For example, she alleges that the Board failed to provide her adequate notice and an opportunity to be heard. City Defendants, however, argue that the Board provided sufficient procedures.

The Supreme Court held that a disciplinary hearing for the purposes of procedural due process "though necessary, need not be elaborate." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985). The Court explained, "In general, something less than a full evidentiary hearing is sufficient prior to adverse administrative action." *Id.* (citing cases). A claim must therefore allege either inadequate notice or no opportunity to respond. *See* Friendly, "Some Kind of Hearing," 123 U. Pa. L. Rev. 1267, 1281 (1975). In addition, the Supreme Court has determined that a tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of

the story. *See Arnett v. Kennedy*, 416 U.S. 134, 170–71, 195–96 (1974), *overruled in part by*, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985); *see also Goss v. Lopez*, 419 U.S. 565, 581 (1975).

The Third Circuit provides additional guidance on the due process owed in an employment context. For example, where there are *substantial* post-deprivation remedies, pre-termination due process only requires notice, explanation of the charges, and an opportunity to respond. *See McDaniels v. Flick*, 59 F.3d 446, 456 (3d Cir. 1995); *see also Jefferson v. Jefferson Cty. Pub. Sch. Sys.*, 360 F.3d 583, 587 (6th Cir. 2004). This Court must therefore consider, as a threshold matter, the post-deprivation remedies available to Plaintiff. If the Court considers these remedies to be substantial, Plaintiff is entitled to procedural due process protections consistent with the Supreme Court's guidance, *i.e.* notice, an explanation of charges, and an opportunity to respond. 59 F.3d at 456.

The remedies available to Plaintiff stem from the New Jersey Tenured Employee Hearing Law ("TEHL").[4] The Court finds that this statute provides *substantial* protections for post-deprivation remedies.[5] For example, the TEHL protects a tenured employee with a hearing before a third-party arbitrator before any *termination* or removal of tenure. *Id.* The TEHL further protects tenured employees, like Plaintiff, from dismissal or reduction in salary, except where inefficiency, incapacity, unbecoming conduct, or just cause is demonstrated following a hearing before a third-party arbitrator. *Id.* As the court explained in *Emri*, "the post-deprivation

---

[4] N.J.S.A. § 18A:6–10, *et seq.*
[5] The Court considers the remedies under the TEHL to support the proposition that the Board owed Plaintiff only general notice and an opportunity to be heard. Plaintiff is not entitled to any of the discussed TEHL protections because she *resigned* during her suspension hearing and therefore waived any post-*termination* rights under this statute. *See Dykes v. Se. Pa. Transp. Auth.*, 68 F.3d 1564 (3d Cir. 1995).

procedures afforded by New Jersey law are meaningful and substantial." *Emri v. Evesham Twp. Bd. of Educ.*, 327 F. Supp. 2d 463, 473 (D.N.J. 2004). These substantial protections suggest that the Board only owed Plaintiff general notice and an opportunity to be heard. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985); *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1077 (3d Cir. 1990). The Court therefore turns back to the factual allegations in the Amended Complaint.

The Board provided Plaintiff sufficient notice and therefore did not violate due process protections. For example, the June 24, 2015 letter provided her with the pending hearing and allegations. Am. Compl. ⁋ 113. As such, it "notif[ied] her that she was charged with the unauthorized access of Taylor's email . . . and was therefore suspended." *Id.* The letter further indicated a hearing would occur on June 26, 2015, and that she would be accompanied by counsel. *Id.* Not only does this notification appear consistent with the Supreme Court's guidance in *Loudermill*, 470 U.S. at 545, but the letter does not contradict Plaintiff's protections within her CBA. For example, Article IV, Section I states that "Whenever any member is asked to appear by the Superintendent, Board or any committee or member thereof, concerning any matter which could adversely affect the continuation of that member['s] . . . employment, . . . he/she shall be given written notice of the reasons for such meeting." [Doc. No. 43-1].

Plaintiff next claims that the June 26, 2015 meeting did not provide her an adequate opportunity to be heard. Specifically, she alleges that Wayne Oppito, Esq. acted as a representative of the New Jersey Principals and Supervisors Association (NJPSA) and not on her behalf as a lawyer. *Id.* ⁋ 117. Plaintiff's related argument challenging Oppito's representation has little bearing on her due process claim. For example, neither the Supreme Court's guidance in *Loudermill* nor the CBA indicate that Plaintiff required a lawyer in her suspension hearing.

Instead, Plaintiff appears to conflate a claim for breach of the duty of fair representation with a procedural due process claim. *See Dykes*, 68 F.3d at 1572 ("If a public employee believes that the grievance process was defective, he may seek relief available under state law."). Again, the general process owed to Plaintiff required only general notice and a hearing. While she clearly was dissatisfied with Oppito's representation, Plaintiff offers no legal basis to support her argument that the Board owed her representation in the suspension hearing. As such, the factual allegations against Oppito, without more, fail to allege a procedural due process violation.

City Defendants clearly provided Plaintiff a fair opportunity to be heard. Plaintiff again admits that she participated in the hearing process. The facts alleged within the Complaint further show that Plaintiff had an opportunity to be heard. For example, she spoke at these hearings and answered questions. She also had the opportunity to make a considered decision before resigning. Taken collectively, the process afforded to her appears wholly consistent the process described by the Supreme Court. Most obviously, the Board provided her with notice and an explanation of the charges. In addition, she appeared in the hearing and had opportunity to ask and answer questions. *See McDaniels*, 59 F.3d at 456. As the Court explained in *Loudermill*, "To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." 470 U.S. at 546.

Because Plaintiff had both sufficient notice and an opportunity to be heard, the Court finds that Plaintiff fails to allege a constitutional violation surrounding her suspension.

### ii. Plaintiff's criminal trial

The Court now considers Plaintiff's second charge of procedural due process violations. Specifically, Plaintiff claims that her procedural due process rights were violated at her criminal

trial.  She states that Defendants deliberately fabricated, suppressed, and destroyed exculpatory evidence, and thereby violated Plaintiff's rights to a fair trial.  Am. Compl. ¶ 215.  The Cape May County Prosecutor submitted the criminal complaint based "solely on the allegations and incomplete investigations" of Defendants.  *Id.* ¶ 156.  Again, the Court finds that Plaintiff fails to plausibly allege a constitutional violation for fabricating evidence to prejudice her criminal trial.

To state a successful Section 1983 claim for knowingly falsified evidence, a plaintiff must show "a reasonable likelihood that, absent that fabricated evidence, [she] would not have been criminally charged," *Black v. Montgomery Cty.*, 835 F.3d 358, 371 (3d Cir. 2016), or convicted, *Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014).  Similarly, to succeed on her claim for suppression of evidence, a plaintiff would have to show that the defendants failed to promptly disclose the fabrication of material, exculpatory evidence.  This "reasonable likelihood" standard "requires that a plaintiff draw a 'meaningful connection' between [his] due process injury and the use of fabricated evidence against [him]."  *Black*, 835 F.3d at 372. Finally, to sustain such a claim there must be "persuasive evidence supporting a conclusion that the proponents of the evidence [were] aware that the evidence is incorrect or that the evidence [was] offered in bad faith."  *Boseman v. Upper Providence Twp.*, 680 F. App'x 65, 70 (3d Cir. 2017) (quoting *Black*, 835 F.3d at 372).  Allegations generally describing such evidence must be present in a pleading to survive a motion to dismiss.  *Id.*

Here, Plaintiff fails to plausibly allege procedural due process violations stemming from her criminal trial.  While Plaintiff is correct that this Circuit may recognize a claim for procedural due process post-criminal acquittal, *Black*, 835 F.3d at 372, she cannot make such claim with overly vague and conclusory allegations.  Again, the Amended Complaint at issue states that Defendants "gave false information to the Cape May County Prosecutor's Office . . .

fabricated a leak and made false criminal accusation[s] . . . for the sole purpose of harming [Plaintiff]." Am. Compl. ⁋⁋ 16, 19. This grouping of Defendants erodes any specific factual allegations against each Defendant. *See Vaughn v. Geo Grp.*, No. 18-10148, 2018 WL 3056066, at *3 (D.N.J. June 20, 2018) (explaining that "conclusory allegations against [d]efendants as a group," which "fail to allege the personal involvement" of the defendants are insufficient to survive a motion to dismiss; when "a number of different defendants are named in a complaint," plaintiff must specify "which [d]efendants engaged in what wrongful conduct," or else the pleading is an impermissibly vague group pleading (citations omitted)). This Court will not impute generalized allegations onto specific Defendants.

This claim further fails because Plaintiff fails to adduce facts that suggest a "meaningful connection" between the injury and the fabricated evidence against her. As the court explained in *Boseman*, this is a heightened requirement, "so significant that it could have affected the outcome of the criminal case." *Black*, 835 F.3d at 372 (quoting *Halsey*, 750 F.3d at 295). Plaintiff's Amended Complaint falls woefully short of this standard. For example, she claims that Superintendent Taylor "did not work with the District's IT department" during the investigation. Am. Compl. ⁋ 148. She further states that Taylor "failed to inform the Prosecutor that she had lost two iPads during the 2014/2015 school year." *Id.* ⁋ 163. Even viewed in a light most favorable to her, these allegations are not "persuasive evidence" supporting a conclusion of bad faith. *Boseman*, 680 F. App'x at 70. Relatedly, this Court finds the general allegation that City Defendants "acted inappropriately" at trial in order to "influence testimony" to be impermissibly vague and conclusory.

Because Plaintiff fails to plausibly allege a procedural due process violation, the Court **DISMISSES** Count III against City Defendants. Further, because the claim of conspiracy is

founded on the same insufficient allegations in Count III, the Court **DISMISSES** Count IV against City Defendants.

### D. Plaintiff's Remaining State Law Claims Against All Defendants

This Court declines to exercise jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court has discretion to decline to exercise supplemental jurisdiction over state law claims if the court "has dismissed all claims over which it has original jurisdiction"); *Maio v. Aetna, Inc.*, 221 F.3d 472, 480 n.6 (3d Cir. 2000); *see also Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."). Having dismissed the Section 1983 claims, no federal law claims remain against any Defendants. Nor are there any affirmative justifications to retain supplemental jurisdiction over the remaining claims. The Court therefore **DISMISSES** Counts VII, VIII, IX, X, XI, XII against all Defendants.

## IV. CONCLUSION

For the reasons discussed above, the pending motions to dismiss [Doc. Nos. 46, 49, 50] are **GRANTED**, and arguments regarding summary judgment within Defendant Kathleen Taylor and Ocean City Board of Education's Motion [Doc. No. 46] are **DISMISSED AS MOOT**. Plaintiffs' Amended Complaint is **DISMISSED**. Counts I and II are **DISMISSED WITH PREJUDICE**. Plaintiff may amend her complaint within fourteen (14) days, consistent with this Opinion. An Order will follow.


Dated: __3/8/2019_____                              *s/* Robert B. Kugler
                                                     ROBERT B. KUGLER

United States District Judge